**SO ORDERED.**

**SIGNED this 31st day of October, 2023.**



Dale L. Somers
United States Chief Bankruptcy Judge

Designated for online publication only

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF KANSAS

IN RE:

TINA M. CARSON             Case No. 23-10664

                             Chapter 13

            **Debtor**

_____

### Memorandum Opinion and Order Granting Chapter 13 Trustee's Motion to Dismiss, Imposing Filing Restrictions, and Denying Additional Pleadings as Moot

For nearly ten years, Debtor has filed bankruptcy petitions in an attempt to save her home from foreclosure. Her current Chapter 13 bankruptcy filing is an extension of that effort. The Court conducted an evidentiary hearing in Debtor's current Chapter 13 case to consider the following: [1]

---

[1] The Chapter 13 Trustee appeared by Karin Amyx, Richard Beheler and Hunter Gould appeared for Ajax Mortgage, and Debtor appeared pro se.

- Doc. 46     Debtor's amended Chapter 13 plan
- Doc. 65     Chapter 13 Trustee's objection to confirmation
- Doc. 66     Creditor Ajax Mortgage's[2] objection to confirmation
- Doc. 50     Creditor Ajax Mortgage's motion to dismiss
- Doc. 63     Chapter 13 Trustee's motion to dismiss with 180-day bar to refiling
- Doc. 68     Order to Show Cause to Debtor why the Court should not impose filing restrictions upon Debtor

After considering all the evidence, the Court concludes Debtor's current bankruptcy filing should be dismissed for cause under 11 U.S.C. § 1307(c)[3] and under § 521(e) and § 1307(e), and concludes dismissal is in the best interest of creditors and the estate. The Chapter 13 Trustee's motion to dismiss is granted, with conditions to refiling as outlined herein. In consideration of this ruling, the remainder of the pleadings listed above are denied as moot.

## I.     Findings of Fact

On October 11, 2001, Daniel Brunson Carson signed a promissory note for $208,000, secured by a mortgage executed the same date on 5451 West Road 11, Ulysses, Kansas (the "Ulysses property").[4] Through multiple assignments, the mortgage is now held by Ajax Mortgage.[5] At some point, at

---

[2] The creditor's full name is "Ajax Mortgage Loan Trust 2021-D, Mortgage-Backed Securities, Series 2021-D, by U.S. Bank National Association, as Indenture Trustee by Gregory Funding," and for brevity, will be referred to herein as Ajax Mortgage.

[3]  Future statutory references are to title 11, the Bankruptcy Code, unless otherwise stated.

[4]  Proof of Claim No. 3. Daniel Brunson Carson is Debtor's adult son.

[5]  *See id.* (attachments to Proof of Claim noting assignments and transfers).

2

least a portion of the property was deeded to Debtor, and Debtor claims an interest in the real property on her Schedule A[6] and claims the Ulysses property as her exempt homestead.[7]

The mortgage holder on the Ulysses property first filed a state court petition for foreclosure in July 2014.[8] Debtor then filed her first bankruptcy petition in December 2014 under Chapter 12, filed initially with counsel but as a quick file to stay the foreclosure action.[9] Debtor's 2014 case quickly encountered difficulties. Only a month after filing, Debtor's initial counsel withdrew from representation and a short time thereafter the Chapter 12 Trustee sought dismissal for failure to file complete Schedules and supporting documents. Debtor obtained new counsel, and a plan was eventually confirmed in September 2015, under which Debtor was obligated to pay the claim secured by the Ulysses property at the contract rate of interest.[10] But Debtor's replacement counsel also withdrew, and the Chapter 12 Trustee moved to dismiss the case for Debtor's failure to make plan

---

[6] Doc. 28 p. 1.
[7] Doc. 43.
[8] Case No. 14 CV 22 (Grant County, Kansas).
[9] Case No. 14-12733 (Bankr. D. Kan.). Debtor claims at least a portion of the Ulysses property is farmland.
[10] In the Chapter 12 plan in the 2014 case, Debtor proposed to make the regular monthly mortgage payment of $1500 and cure a pre-petition arrearage of $20,000 from plan payments of $350 per month. Case No. 14-12733, Doc. 61, pp. 7-8.

3

payments.[11] Ultimately, the case was dismissed in October 2016 and closed in February 2017.

In July 2017, the mortgage creditor filed a second foreclosure petition in state court.[12] The state court granted summary judgment to the mortgage creditor, but no journal entry was entered,[13] and Debtor filed a Chapter 13 petition on June 18, 2018.[14]

In Debtor's 2018 case, Debtor claimed the Ulysses property as her exempt homestead, and her confirmed plan in that case required her to pay the Ajax Mortgage claim on that property through a gift from her daughter upon the realization of proceeds from the sale of a separate real property (referred to by the parties as "the Lotus property").[15] The Lotus property was

---

[11]  Soon after Debtor's plan was confirmed, Debtor defaulted on plan payments. At some point during the Chapter 12 case, a potential sale of the Ulysses property (or farm ground associated with the Ulysses Property) was proposed by Debtor. The Chapter 12 Trustee eventually sought authority to sell the same under a purchase proposal letter of intent stating, "Debtor has allegedly consented to the sale." Case No. 14-12733, Doc. 143. In August 2016, the mortgage creditor moved for stay relief, alleging Debtor had not made post-petition payments between January 2015 through July 2016 for a delinquency of nearly $29,000 and sought to pursue state law foreclosure of its mortgage. *Id.*, Doc. 148. In August 2016, the Chapter 12 Trustee filed a motion for dismissal for cause due to Debtor's failure to make payments from September 1, 2015, to August 1, 2016, of regular monthly mortgage payments of $18,000 and plan payments on the arrearage of $4200. *Id.*, Doc. 162. On September 12, 2016, the mortgage creditor was granted stay relief to proceed *in rem* with foreclosure. *Id.* Doc. 171.

[12]  Case No. 17 CV 17 (Grant County, Kansas).

[13]  As noted, the state court granted summary judgment to the mortgage creditor, but Debtor refused to sign the journal entry of judgment, requiring the mortgage creditor to submit the journal entry under Kan. S. Ct. Rule 170.

[14]  Case No. 18-11150 (Bankr. D. Kan.).

[15]  At that point, the mortgage arrearage had grown to $84,974.

4

never sold, and Debtor defaulted on her plan payments. Three times, orders were entered granting Debtor extensions of time within which the Lotus property could be sold and Debtor make her plan payments, but despite all three extensions, the property was not sold.[16] Eventually in the 2018 case, the Court granted Ajax Mortgage stay relief, the Chapter 13 Trustee moved for dismissal for Debtor's failure to make plan payments, and the 2018 was dismissed.[17] The case was dismissed in March 2022 and closed in June 2022.

In January 2022, after obtaining stay relief from Debtor's 2018 case, Ajax Mortgage commenced a third foreclosure action in state court against the Ulysses property.[18] After multiple continuances granted to Debtor, the

---

[16] The confirmed plan originally required the sale to occur by June 1, 2019. Citing a broken ankle, Debtor filed a motion to modify her confirmed plan on May 31, 2019 requesting a four-month extension to October 1 to sell the Lotus property. Case No. 18-11150, Doc 63. The extension was granted, but on September 30, 2019, Debtor filed a second post-confirmation motion to modify, seeking to further extend the sale deadline to June 2020. *Id.*, Doc. 69. In this motion, Debtor again cited her broken ankle, which required surgery, and represented that the Lotus property had been listed for sale with Jon Fort at ARC Real Estate. The Chapter 13 Trustee objected, noting that the Trustee contacted Mr. Fort regarding the listing and Mr. Fort denied that the Lotus property was currently listed for sale and indicated that it was not in marketable condition. The Chapter 13 Trustee ultimate agreed to extend the sale date to June 30, 2020, but if it was not sold by private treaty by the June 30 deadline, it would be sold at a non-reserve auction. *Id.*, Doc. 75. On August 11, 2020, the Chapter 13 Trustee filed a second motion to dismiss for failure to comply with the terms of the confirmed plan and lack of feasibility. The Trustee agreed to withdraw the motion in exchange for which Debtor would sell or auction the property by June 30, 2021, some three years after the original sale deadline. No sale of the Lotus property ever occurred.
[17] Additional details concerning the 2018 case, Debtor's numerous delays therein, and Debtor's numerous appeals from orders issued therein, can be found in this Court's August 18, 2023 order granting stay relief to Ajax Mortgage. Doc. 59.
[18] Case No. 2022-CV-000002 (Grant County, Kansas).

5

state court again granted summary judgment to Ajax Mortgage on May 11, 2023.

The same date, Debtor filed a Chapter 13 petition in the bankruptcy court in the Western District of Missouri.[19] The case was filed as a quick file, with no Schedules or supporting documents. This bankruptcy case was short-lived, as the bankruptcy court dismissed the case on June 7, 2023 for failure to obtain prepetition credit counseling.[20]

Debtor's current Chapter 13 case was filed two weeks later, on June 30, 2023. To sum, Debtor began filing bankruptcy petitions in 2014. She has three prior bankruptcy cases, all of which were dismissed on a trustee's motion, and one current Chapter 13 case, as follows:

| Case Number | Date Filed | District | Dismissal Date | Date Closed |
|---|---|---|---|---|
| 14-12733-12 | 12/10/2014 | Kansas | 10/4/2016 | 2/24/2017 |
| Notes: A Chapter 12 case. Case dismissed on Chapter 12 Trustee's motion to dismiss for failure to make plan payments. | | | | |
| 18-11150-13 | 6/18/2018 | Kansas | 3/11/2022 | 6/13/2022 |
| Notes: A Chapter 13 case. Case dismissed on Chapter 13 Trustee's motion to dismiss for failure to comply with plan and make plan payments. | | | | |
| 23-40637-13 | 5/11/2023 | Western District of Missouri | 6/7/2023 | 9/28/2023 |
| Notes: | | | | |

---

[19] Case No. 23-40637 (Bankr. W.D. Mo.).
[20] Again, additional details concerning the 2023 case in the Western District of Missouri can be found in this Court's prior order. Doc. 59.

| | | | | |
|---|---|---|---|---|
| A Chapter 13 case. Case dismissed for failure to obtain credit counseling from an approved credit counseling agency within 180-days of filing. | | | | |
| 23-10664-13 | 6/30/2023 | Kansas | | |
| Notes: A Chapter 13 case. Chapter 13 Trustee seeks dismissal for cause under § 1307(c). | | | | |

Debtor's current case was again filed as a "quick file"—she filed only her petition, and no Schedules, Statement of Financial Affairs, or other required documents. Debtor also filed her current case in the Kansas City division, and the case was transferred to this Court. Nearly a month after filing her petition, on July 19, 2023, Debtor filed her first set of Schedules[21] and a proposed Chapter 13 plan.[22] The plan was not properly served or noticed on creditors as requited by D. Kan. LBR 3015(b).1(b). On August 4, 2023, Debtor filed an amended plan. Again, the amended plan was not properly noticed or served on creditors, and the Court also issued an Order to Correct because the plan was not on the District of Kansas form plan, as required by Standing Order 17-1.

Early in the case, Ajax Mortgage filed a motion for relief from stay, seeking stay relief to pursue its state law remedies of foreclosure on the Ulysses property.[23] The motion for relief from stay was scheduled for hearing

---

[21] Doc. 28. Debtor filed additional Schedules on July 28, 2023 (Doc. 36) and July 31, 2023 (Doc. 40, Doc. 41, Doc. 42, Doc. 43, and Doc. 44).

[22] Doc. 29.

[23] Doc. 32.

7

on August 14, 2023, and Debtor received notice of that hearing,[24] but did not appear. On August 18, 2023, the Court entered an Order granting Ajax Mortgage *in rem* relief from the automatic stay under § 362(d)(1) and (d)(4) and relief from the co-debtor stay under § 1301 to exercise its state law remedies and proceed with the pending state court mortgage foreclosure action. The Court made the following findings of fact:

> Debtor has now filed four bankruptcy cases since 2014. The two bankruptcy cases in which Debtor's plans were confirmed have been dismissed for Debtor's failure to make plan payments (including ongoing mortgage payments on the Property and payments to cure the prepetition arrearage) and to comply with the confirmed plans (i.e. sell the Lotus property). Nothing has substantially changed during this nine-year period, other than the amount of the debt has grown; the arrearage alone has ballooned from $84,000 to over $200,000. No payments have been made on the mortgage or arrearage since at least September of 2021, when Ajax [Mortgage] obtained stay relief in the 2018 Chapter 13 case. Debtor is unable or unwilling to comply with the confirmed plans that she has proposed. . . .

> The Court finds that the Debtor has filed at least three bankruptcy cases affecting the Property that were a scheme to delay or hinder Ajax's ability to exercise its state law remedies and foreclose its mortgage on the Property—the 2018 Chapter 13 case and two Chapter 13 cases in 2023. As noted above, these three case filings hindered and delayed Ajax's ability to prosecute its pending foreclosure actions.[25]

---

[24] Doc. 33 (Notice of Hearing). On August 11, 2023, Debtor sought a continuance of the hearing, which the Court denied, concluding Debtor's motion lacked "detail, specificity and substantiation." Doc. 54 p. 2.

[25] Doc. 59 p. 7-8.

The Court concluded the totality of the circumstances demonstrated a scheme to hinder or delay foreclosure of the mortgage on the Ulysses property and imposed a two-year stay relief order binding on any subsequently filed bankruptcy case.[26]

Both the Chapter 13 Trustee and Ajax Mortgage have filed motions to dismiss Debtor's current case, and Debtor has not responded to either. The Chapter 13 Trustee's motion seeks dismissal on the following bases:

- Unreasonable delay that is prejudicial to creditors under § 1307(c)(1), based on Debtor's failure to appear at scheduled § 341 hearings;

- Failure to commence plan payments as required by § 1326(a)(1), with dismissal under § 1307(c)(4); and

- Failure to produce 2022 state and federal tax returns, as required by § 521(e)(2) and § 1308(a).

The Chapter 13 Trustee's motion to dismiss also asks for a bar to refiling of 180 days, pursuant to § 349(a).[27] The motion to dismiss of Ajax Mortgage also seeks dismissal under § 521(e), based on Debtor's failure to produce her prior tax returns upon request.[28]

The Chapter 13 Trustee also filed an objection to confirmation of Debtor's proposed Chapter 13 plan, with the following objections:

- Lack of feasibility under § 1325(a)(6);

---

[26] *Id.* p. 8. Debtor sought rehearing of Ajax Mortgage's motion for relief from stay, which this Court denied. Doc. 61. Debtor recently filed a notice of appeal. Doc. 85.
[27] Doc. 63
[28] Doc. 50.

9

- Failure to use the Kansas form plan, as required by D. Kan. Standing Order 17-1;

- Plan does not pay the value of property that would be paid if the case was liquidated under Chapter 7, and does not comply with § 1325(a)(4);

- Plan is not proposed in good faith under § 1325(a)(3), and Debtor's petition is not filed in good faith under § 1325(a)(7);

- Failure to commit all or such portion of future earnings as necessary for the execution of the plan under § 1322(a)(1); and

- Plan is unclear as to sale of property to fund the plan and treatment of Ajax Mortgage's claim.[29]

Ajax Mortgage also filed its own objection to confirmation of Debtor's plan,[30] arguing lack of good faith, lack of feasibility, and violation of the requirements for the treatment of a secured claim under § 1325(a)(5). Ajax Mortgage also argued the plan as proposed was moot, given it had obtained stay relief to proceed with its state court foreclosure of the Ulysses property.

Debtor did not appear for her first § 341 meeting of creditors on August 10, 2023, nor the continued meeting of creditors on August 24, 2023. On August 31, 2023, this Court entered an Order to Appear and Show Cause, requiring Debtor to appear at a hearing on September 26, 2023 and show cause why her case should not be dismissed and filing restrictions should not be imposed for abuse of the bankruptcy process and system.[31] Debtor was

---

[29] Doc. 65.

[30] Doc. 66.

[31] Doc. 68.

10

specifically instructed the Court would consider "barring discharge of certain debts in a future case, 11 U.S.C. § 349(a); barring the filing of a new bankruptcy case for a period of 180 days, § 109(g)(1); and further tailored restrictions on filing a future bankruptcy case after expiration of the 180-day period under § 105(a) and 28 U.S.C. § 1651."[32] Debtor was given detailed instructions as to appearance at the hearing, the matters that would be heard, the submission of exhibits, and the filing of legal briefs.[33]

Just before the September 26, 2023 hearing, Debtor filed multiple items that the Court construed as a motion to continue the hearing. Debtor's papers were difficult to interpret, but they did contain a note from a physician indicating she had been seen in that physician's office on September 21, 2023 and stating generally that Debtor "could not attend court due to a surgical procedure" on September 1, 2023.[34] The Court continued the September 26 hearing to October 18, 2023.[35]

Again, just before the scheduled October 18, 2023 hearing, Debtor submitted papers the Court generously construed as a request for continuance.[36] The Court denied the requested continuance. The Court noted Debtor again waited less than twenty-four hours before the hearing to make

---

[32] *Id.* p. 1 n.1.
[33] Doc. 69.
[34] Doc. 78 p. 4.
[35] Doc. 80.
[36] Doc. 82.

her request (even though her request was based on a physician's note that was this time dated nine days prior), gave no indication of future availability to appear, failed to include a written motion, failed to serve her request on the Chapter 13 Trustee or Ajax Mortgage, and did not specify the length of the requested continuance.[37] The Court did, however, permit Debtor to appear telephonically if she so chose, rather than in person.

The morning of the hearing, Debtor again filed a pleading, titled "Objections with Motion for Continuance of October 18th Hearing with Stay Relief of any Sales and Immediate Stay of Execution of Order of Sale," and dated October 8, 2023, seeking, among many other unrelated items, a continuance of the hearing.[38] At the hearing that afternoon, Debtor did not initially appear, and the Court orally denied the motion filed that morning, for essentially the same reasons as it had denied her request the day before. Counsel for the Chapter 13 Trustee and for Ajax Mortgage appeared and provided evidence to support their motions to dismiss and their objections to confirmation. The Chapter 13 Trustee provided evidence Debtor has made zero payments since the filing of her current Chapter 13 case, provided evidence of the notice Debtor was given of each § 341 hearing and reported

---

[37] Doc. 83.
[38] Doc. 84.

Debtor did not appear at either, and confirmed Debtor has never provided her 2022 state or federal tax returns.

Toward the end of the Chapter 13 Trustee's presentation of evidence, Debtor appeared at the hearing telephonically. She generally argued the proceeding was "not fair," argued opaquely about "notices" she sent that had not been filed, claimed to not know why her October 8, 2023 "motion" for a continuance was not received until that morning, and claimed the state court was biased against her.

Debtor offered no reason why her current bankruptcy case should not be dismissed and filing restrictions should not be imposed, other than claiming she "faxed her taxes in" and was current on all returns prior to filing her petition, and that she had submitted a proposed plan. Debtor admitted she had made no payments in this case, although she claimed without evidence that a prior order of this Court ordered her *not* to make payments. Regarding attendance at § 341 meetings, Debtor alternately claimed she missed her first § 341 meeting because she was "very ill," her "vehicle blew a head gasket," and "she was in the hospital." Regarding her continued § 341 meeting, she claimed to have called in and waited on the line, claimed she was forced out by two calls from other states, faulted the Chapter 13 Trustee's office for her non-appearance, and then claimed to have called the

Court thereafter, although the Court has no record of her call on the date of her second § 341 meeting.

This Court concluded the evidentiary hearing by instructing the parties it would dismiss the case and informed them that detailed findings of fact and conclusions of law would follow concerning dismissal, filing restrictions, and the additional pleadings.

## II.  Conclusions of Law

Contested matters concerning "the administration of the estate" and "confirmation of plans" are core matters under 28 U.S.C. § 157(b)(2)(A) and (L) over which this Court may exercise subject matter jurisdiction.[39]

### A.  Dismissal of Debtor's Case is Warranted

The Court concludes the Chapter 13 Trustee's motion to dismiss should be granted under § 1307(c), § 521(e), and § 1307(e).

### 1.  *Dismissal is Warranted under § 1307(c)*

Under § 1307(c), on request of the Chapter 13 Trustee, and after notice and hearing, the Court may dismiss a Chapter 13 case for cause if dismissal

---

[39] This Court has jurisdiction pursuant to 28 U.S.C. § 157(a) and §§ 1334(a) and (b) and the Amended Standing Order of the United States District Court for the District of Kansas that exercised authority conferred by § 157(a) to refer to the District's Bankruptcy Judges all matters under the Bankruptcy Code and all proceedings arising under the Code or arising in or related to a case under the Code, effective June 24, 2013. D. Kan. Standing Order 13-1 *printed in* D. Kan. Rules of Practice and Procedure (March 2018).

14

would be in the best interest of creditors and the estate.[40] Cause is not defined in the Code, but examples of cause are given in the statute, including both "unreasonable delay by the debtor that is prejudicial to creditors"[41] and "failure to commence making timely payments under section 1326."[42]

The Chapter 13 Trustee first moves for dismissal based on unreasonable delay that is prejudicial to creditors under § 1307(c)(1), based on Debtor's failure to appear at scheduled § 341 meetings. On September 19, 2023, the Chapter 13 Trustee filed a status report advising that no § 341 meeting has been concluded due to Debtor's failure to appear.[43] As noted above, at the hearing on this matter, Debtor acknowledged she was aware of the initial § 341 meeting of creditors and its continuance. Debtor stated a litany of alleged reasons she missed the first meeting, but her testimony was not credible. Debtor claimed excuse after excuse, but gave no detail, and appeared to be conjuring excuses on the spot. Regarding the second missed meeting, Debtor shifted the blame on any one or thing she could think of, and her excuses were again not credible.

---

[40]  § 1307(c) ("on request of a party in interest or the United States trustee and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title, or may dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause").
[41]  § 1307(c)(1).
[42]  § 1307(c)(4).
[43]  Doc. 76.

There are multiple additional reasons to dismiss Debtor's current bankruptcy case based on unreasonable delay that is prejudicial to creditors. Debtor has not filed a confirmable plan.[44] Debtor filed a plan and an amended plan, but the substantive deficiencies are numerous. For example, Debtor's plan claims an arrearage to Ajax Mortgage, and proposes ongoing monthly payments of $4500, but does not acknowledge Ajax Mortgage has been granted stay relief.[45] There is no clear indication how the plan could be funded, or claims treated. Debtor has never noticed a plan and has not used the proper form to propose a plan. To sum, Debtor has made no progress in this case toward confirmation of a plan of reorganization.

The Trustee next seeks dismissal for failure to commence plan payments as required by § 1326(a)(1), with dismissal under § 1307(c)(4). Under § 1326(a)(1), "[u]nless the court orders otherwise, the debtor shall

---

[44] *See, e.g.*, *In re Guebert*, No. 07-41165, 2008 WL 1744777, at *7 (Bankr. D. Kan. Apr. 11, 2008) (finding cause for dismissal under § 1307(c) for "failure to timely file a confirmable plan").

[45] The amended plan is confusing and illegible. In ¶ 2.1, Debtor proposes to make monthly payments to the Chapter 13 Trustee of $4500 and $500 each for sixty months but reserves her "rights to redress former actions of prior servicer companies." Under "Part 3 Treatment of Secured Claims," ¶ 3.1 addressing maintenance of payments and cure of default, if any, Debtor checked the "none" box but then lists creditor "U.S. Bank/Ajax Mortgage" without identifying the collateral, listing a $4500 current installment payment and $500 as the amount of arrearage. In ¶ 3.2, Debtor checks the "none" box regarding request for valuation but then purports to reserve her rights with respect to "U.S. Bank/Ajax Mortgage." In ¶ 3.3 Debtor identifies Ajax Mortgage as the creditor that she proposes to pay monthly at $4500. In ¶ 3.4, Debtor purports to claim lien avoidance impairing an exemption but she does not complete the calculation or provide further information. *See* Doc. 46.

16

commence making payments not later than 30 days after the date of the filing of the plan or the order for relief, whichever is earlier." Then under § 1307(c)(4), cause for dismissal includes "failure to commence making" the payments required by § 1326. Debtor admits she has failed to make any payments in her current case, pending since June 30, 2023, just over four months ago. Again, Debtor's excuse for why she has not made plan payments was not credible. She claimed to believe an order of this Court directed her to not make payments but provided no evidence of such an order. The Chapter 13 Trustee introduced evidence of Debtor's failure to commence plan payments, and dismissal is warranted on this basis.

   2.   *Dismissal is Warranted under § 521(e) and § 1307(e)*

   The Trustee next seeks dismissal under § 521(e)(2) for Debtor's failure to produce 2022 state and federal tax returns. Under § 521(e)(2)(A), a Chapter 13 debtor is required to provide, "not later than 7 days before the first date set for the first date set for the meeting of creditors," a copy of the debtor's prior year's income tax return. Then under § 521(e)(2)(B), if the debtor fails to comply with this duty, the court "shall dismiss the case unless the debtor demonstrates that the failure to so comply is due to circumstances beyond the control of the debtor."[46] Likewise, § 1308(a) requires a Chapter 13

---

[46]  Further, under § 521(e)(2)(C), the basis for the motion to dismiss of Ajax Mortgage, a court "shall" dismiss a debtor's case if the debtor fails to provide a copy of her tax return to the requesting creditor. Ajax Mortgage requested Debtor's tax

debtor to file with tax authorities the prior four years of tax returns. And then under § 1307(e), upon the debtor's failure to comply with § 1308, upon the Chapter 13 trustee's request and after notice and hearing, the court shall dismiss or convert the case to Chapter 7, whichever is in the best interest of creditors and the estate.

At trial of this matter, the Chapter 13 Trustee explained its efforts to obtain Debtor's 2022 tax returns and what was provided to the Trustee's office instead of returns.[47] Debtor claimed to have filed her 2022 returns, although she provided no evidence of this claim. Regardless, the Chapter 13 Trustee credibly provided evidence that its office had not received returns despite timely request, and Debtor did not provide evidence that her failure to provide them was "due to circumstances beyond [her] control." The Court therefore concludes dismissal of Debtor's case is warranted on this basis as well.[48]

_____

return on July 6, 2023, Doc. 16, and again on July 18, 2023, Doc. 27. No return was ever provided.

[47] The purported 2022 federal "return" provided to the Chapter 13 Trustee was not actually filed with taxing authorities and no state return has been filed or provided.

[48] There are multiple additional bases for dismissal of Debtor's current case. For example, § 1307(c) also requires good faith by a debtor and permits dismissal or conversion based on good faith. *In re Armstrong*, 303 B.R. 213, 221 (10th Cir. BAP 2004) ("The examples of cause listed in [§ 1307(c)] are not exclusive, and good faith inquiries have traditionally been encompassed by § 1307(c). While lack of good faith is not expressly mentioned, a lamentable waste of judicial resources would result from allowing Chapter 13 cases filed in bad faith to progress to confirmation[.]"). The good faith analysis is a totality of the circumstances test. *Gier v. Farmers State Bank (In re Gier)*, 986 F.2d 1326, 1329 (10th Cir. 1993) (noting that when making the determination whether a "Chapter 13 petition has been filed in bad faith under

18

### 3. Dismissal, Rather than Conversion, is in the Best Interest of Creditors and the Estate

The Court concludes it is in the best interest of creditors and the estate to dismiss Debtor's case rather than convert it to Chapter 7. Factors courts consider when making this determination are:

> (1) whether some creditors received preferential payments, whether equality of distribution would be better served by conversion rather than dismissal; (2) whether there would be a loss of rights granted in the case if it were dismissed rather than converted; (3) whether the debtor would simply file a further case upon dismissal; (4) the ability of the trustee in a chapter 7 case to reach assets for the benefit of creditors; (5) in assessing the interest of the estate, whether conversion or dismissal of the estate would maximize the estate's value as an economic enterprise; (6) whether any remaining issues would be better resolved outside the bankruptcy forum; (7) whether the estate consists of a "single asset,"; (8) whether the debtor had engaged in misconduct and whether creditors are in need of a chapter 7 case to protect their interests; (9) whether a plan has been confirmed and whether any property remains in the estate to be administered; and (10) whether the appointment of a trustee is desirable to supervise the estate and address possible environmental and safety concerns. [49]

The plethora of documentary evidence from Debtor's current case and the preceding three cases shows that Debtor's purpose in repeat filing has been to thwart her creditors, particularly the holder of the mortgage on the Ulysses

---

§ 1307(c), the bankruptcy court must consider the totality of the circumstances" internal quotation omitted)); *see also Flygare v. Boulden*, 709 F.2d 1344 (10th Cir.1983) (eleven factors enumerated for consideration under totality of circumstances approach). The Court has already concluded in this case that the totality of the circumstances demonstrates a scheme by Debtor to hinder or delay foreclosure of the mortgage on the Ulysses property. Doc. 59 p. 8.

[49] *In re Helmers*, 361 B.R. 190, 196-97 (Bankr. D. Kan. 2007) (internal quotation omitted).

property. Debtor has frequently filed and then had multiple cases dismissed, all with little progress toward the Chapter 13 goal of repayment of debt.

In the current case, Debtor has not attended a § 341 meeting of creditors, has not commenced payments, and has not proposed a viable plan of reorganization. Debtor has not filed complete Schedules and supporting documents, despite repeated amendments, and has never provided her 2022 tax returns. Debtor has enjoyed the benefits of the automatic stay since she filed her current case but has not complied with many of the duties of a Chapter 13 debtor.

There do not appear to be any viable, non-exempt assets to be pursued by a Chapter 7 trustee, or any factors favoring conversion to a Chapter 7 case. This case should be dismissed so creditors have the option to turn to, or continue with, state law collection efforts.

### B.    Filing Restrictions are Warranted

In addition to dismissal, the Chapter 13 Trustee seeks the imposition of filing restrictions, requesting the Court impose a 180-day bar to refiling.

Under § 349(a) and § 109(g)(1), a court may bar the filing of a new bankruptcy case for a period of 180 days.[50] Under § 349(a), a dismissal of a case does not prejudice the debtor with respect to filing a new case, except as

---

[50]  In addition, under § 349(a), a court may prevent the discharge of certain debts in future cases. The Chapter 13 Trustee has not requested a bar from discharge in future cases of any scheduled debts from this current case.

provided in § 109(g). Under § 109(g)(1), no individual may be a debtor under title 11 if the individual "has been a debtor in a case pending under this title at any time in the preceding 180 days if-- (1) the case was dismissed by the court for willful failure of the debtor to abide by orders of the court, or to appear before the court in proper prosecution of the case." Then under § 105(a) and 28 U.S.C. § 1651, a court may impose certain restrictions on the filing of future bankruptcy cases.[51] Debtor has been given ample opportunity to object to proposed filing restrictions.[52]

The Court concludes filing restrictions are warranted. Debtor's filing history demonstrates a pattern of behavior of dodging creditors without meaningful progress toward the Code's requirements. In this and her prior cases, Debtor has shown a cavalier attitude toward her duties as a bankruptcy debtor. As detailed throughout this Order, the Court concludes Debtor's actions in this and her prior cases have been deliberate and

---

[51] *Armstrong v. Rushton (In re Armstrong)*, 309 B.R. 799, 805 (10th Cir. BAP 2004) (recognizing court's inherent power to control litigants' abuse of the court system, as supplemented by § 105(a) and 28 U.S.C. § 1651).

[52] *See Tripati v. Beaman*, 878 F.2d 351, 354 (10th Cir. 1989) (requiring notice and an opportunity to object to the proposed filing restrictions prior to their implementation). Debtor was given notice of the Chapter 13 Trustee's motion to dismiss requesting a 180-day bar to refiling, Doc. 53, and she did not respond. In addition, Debtor received notice of this Court's Order to Appear and Show Cause, that warned the Court would consider barring discharge of debts in future cases under § 349(a), a 180-day bar to refiling under § 109(g)(1), and further restrictions on filing a bankruptcy case after the expiration of a 180-day bar. Doc. 68.

21

intentional, and easily concludes Debtor has not appeared in this Court "in proper prosecution" of her case.

Therefore, under § 109(g)(1), Debtor is barred from refiling a bankruptcy case for the next 180 days after dismissal of this case. After expiration of that 180-day bar, the following filing restrictions will apply for an additional year beyond the 180-day bar:

1.    Debtor may file a new bankruptcy case through a duly licensed attorney admitted to practice in this Court.

2.    If Debtor seeks to file a bankruptcy petition without an attorney during this one-year period, she must obtain permission from the Court to file a new case under the following procedures and conditions:

a.    A motion requesting leave to proceed without an attorney must be filed with the bankruptcy petition. Debtor's sworn affidavit or declaration under penalty of perjury must be attached to the motion requesting leave to proceed without an attorney in which Debtor states that she will comply with the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules, all orders of the Court, and that she will attend all scheduled § 341 meetings of creditors and cooperate fully with any trustee.

b.    The petition must be complete, and must include fully completed Schedules, Statement of Financial Affairs, summary of schedules, verification of creditor matrix, certificate of credit counseling, employee income records, DeBN request form, and statement about Debtor's social security number. Debtor must either pay the filing fee or seek waiver of the fee or to pay in installments.

c.    Debtor must submit all of the above documents to the clerk of the bankruptcy court. If the documents are insufficient, the case will be rejected for filing unless and until the Court's filing requirements are met.

These restrictions are not imposed in an attempt to deny Debtor access to bankruptcy relief but are intended to ensure Debtor uses bankruptcy for its intended purpose, to obtain a fresh start, and not as indefinite protection from creditors. The Court concludes these restrictions are carefully tailored and appropriate under the circumstances of this case.[53]

### C. Additional Requested Relief is Moot

Both the Chapter 13 Trustee and Ajax Mortgage filed additional pleadings in this case beyond the Chapter 13 Trustee's motion to dismiss. Because the Court grants the Chapter 13 Trustee's motion to dismiss, the Court concludes the additional pleadings are moot, and denies or overrules them as such.

## III. Conclusion

The Court grants the Chapter 13 Trustee's motion to dismiss.[54] Debtor's case is dismissed, and Debtor is enjoined under § 349(a) and § 109(g)(1) from filing another bankruptcy case for a period of 180 days from the date of entry of this dismissal Order. Debtor shall be subject to the filing restrictions set forth above for one (1) year following the expiration of the 180-day bar.

---

[53] *Id.* at 353 (approving "carefully tailored restrictions under the appropriate circumstances" (internal quotation omitted)).
[54] Doc. 63.

Case 23-10664    Doc# 94    Filed 10/31/23    Page 23 of 24

The motion to dismiss of Ajax Mortgage[55] is denied as moot. In addition, the objections to confirmation filed by the Chapter 13 Trustee[56] and Ajax Mortgage[57] are also overruled as moot.

**It is so Ordered.**

###

---

[55] Doc. 50.
[56] Doc. 65.
[57] Doc. 66.